Pulte Home Corp. v. TIG Insurance Co. Pulte Home Corp. v. TIG Insurance Corp. Pulte Home Corp. v. TIG Insurance Corp. Good morning, may it please the Court. Robert Carlson on behalf of Pulte Group doing business as Pulte Home Corp. Appellant. First thing, well I'd like to reserve some time to rebut if I may. Okay, go ahead. First thing I'd like to invite the Court to consider is that this is a case about defense, not about indemnity. The cases that have been cited for the most part and the cases relied on by the trial court were a determination of a duty or an obligation to indemnify and not an obligation to defend. The obligation to defend is quite wrong. The obligation to defend is if there is an arguable way that coverage could apply, then there's an obligation by the insurance company to defend. That obligation continues from the time of tender until they can prove that there's no way that there's a defense obligation. That didn't take place in this case. The trial court relied on cases that talk about the duty to indemnify. The duty to indemnify is much narrower. It's also at the end of the litigation, not the beginning. The situation we have with construction defect in California and other places is that the plaintiffs are not required to give much specificity. The plaintiffs are not required to give any type of information concerning when an occurrence took place for purposes of insurance coverage. The plaintiffs are not required to give much information other than a generalized statement that there's a violation of the standards associated with building. That information is all that a developer of my client has, and at that point in time they have to seek what insurance company is available, what insurance coverage is available to them. That insurance coverage in this case is provided by additional insurance endorsements. Those additional insurance endorsements are issued by a variety of insurance companies, one of which is a defendant here. The issue there is that they have a pattern of denying hundreds of these tenders. They have taken the position throughout dependency of when they wrote these policies that they will never defend under an additional insurance endorsement. Can we get to the issues in the case, please? And the issue in this case is that that particular conduct was determined by an appellate court in California to be despicable, and they adjudicated the very issues that the defense has raised here to the trial court. That case and others, four others, have adjudicated that the additional insurance endorsement provides completed operational coverage, that it provides for a defense, that it provides that the work product exclusion is not applicable, and that the sole negligence. All right. So the question is, to get to the issues in the case, first of all, the case has been presented as if the choice of law issue is directly before us and determinative in some fashion. Is that right? Yes. Why exactly? I mean, the original case, the case in California, decided that X provision meant Y thing in this contract. Right? This contract has a choice of law provision, and that is part of how you decide what X provision means in Y contract, i.e., what law you're looking at. I don't really understand why we're going back to a choice of law issue rather than regarding it as part of the issue preclusion that was decided when it was decided that X provision means Y thing. But you seem to have bought into the notion that there's a separate choice of law question here. Well, the choice of law issue, we think, was wrongly decided by the trial court in that She seemed to rely on the fact that my client moved from Detroit, where they'd been for many, many years, to Georgia at some point in time. They were not a contracting party. They were not one of the parties in the original agreement between ASLIC and the subcontractor. And we think that that is improperly decided because it allows them to rely on a case which we don't think is applicable. And that applicable case is a case that makes the decision on the basis of coverage and not the basis of duty to defend. I think I made it up. Counsel, can I ask a question here? It seems to me, I'm not sure why you're fighting so hard about Georgia law, because it also broadly requires a defense whenever a complaint even arguably would yield coverage under a policy. And I'm not sure what difference it makes to you if Georgia law applies. It seems to be perfectly in line with your arguments. Well, I agree with the... That then there's a collateral estoppel problem. Yes. The difference is, of course, that there's a different level of collateral estoppel requirements for California and Georgia, and as we said several times in our brief and before the trial court, that we believe the law is coexistent in both states as to the duty to defend. Right, but if you get to the duty to defend, which as you started out, you start out by saying that's the issue here and it's not about indemnification, but you have to be able to show that arguably there was coverage. What's your best shot that arguably there was coverage, please? And there are two different provisions at stake here, right? Yes. Okay, so can we discuss each of them as to what's your best shot? Under Georgia law, or under California and Georgia law, what's the difference, if there is one? Well, the allegations of the complaint demonstrate that there's property damage to property not worked on by the insured, the insured being the subcontractor. So the biggest reason one can see that the insurer wanted to get to Georgia law was this auto owner's insurance case. That's true. And how does that fit into your argument? Well, the auto owner's insurance case is not a claim for defense. As I started out talking at the beginning, they have allowed the trial court to go into a duty to indemnify, which is what auto owner's is about. It also is not a case that talks about, well, the main thing it does is it's a first-party claim versus a third-party claim. This is a third-party claim. And even though the defendant in this case tries to argue in their brief that this is a first-party claim in that they say that my client's seeking benefits under the policy, which is a broad definition of first-party claim, but really what we're doing is we're asking for a defense from a third party, hence a third-party claim. The auto owner's case is, one, not about a defense, and, two, it's a first-party claim. And the difference between a first-party and a third-party claim is the fact that there's no duty to defend under a first-party claim. Does it or does it not read the business, what you're calling a business risk defense, such that the general contractor, who is your client, the work involved is their work, i.e., the whole building as I understand it, and not the work of the subcontractor? Does it say that or does it not say that in a way that it necessarily applies to this case? It says that as a first-party claim. Well, what difference does that make? As a first-party claim, there's no analysis of the duty to defend. Okay. And what difference does that make if, in fact, if this case held definitively, that when you have words that say X, they mean Y, then how would there be a duty to defend? Because, well, because they don't know the facts at the outset of the litigation. They can't say that the work of the claimant... But the facts as you, I mean, the best facts for you are that as to this business risk provision is that you're, that whatever was done was done by subcontractors and they worked on specific areas. And so as to whatever spinoff impact that may have had, it doesn't preclude your client. That's true. All right? But if this case says the opposite, then it would apply to a duty to defend, unless there's some difference in the wording or some reason not to apply it here. Well, this case... I mean, I should tell you that I find this a very strange interpretation. Yes. But leaving that aside, if that's what it says... And it goes against other decisions in that state, including Salt Horse, which talks about the opposite, which is that only the area in which they actually work is the area that is excluded under the business risk clause. But on the collateral stop list, and why we think that's important, is that's been determined to go in our favor because... I'm sorry. I'm sorry. Go ahead. Because the court determined that under California law, which we think is applicable law, that, in fact, the business risk exclusion applies solely to the work of the subcontractor. Okay. And there's many cases here that talk about that. So do you want to talk about the choice of law question? Because, I mean, first of all, how does the choice of law question affect the issue of preclusion? Well, the issue of preclusion in Georgia is much more broad. In fact, it's actually, I think, more favorable to us than the California one because it says that you're going to be bound by the decisions from out of state, even if it's different law. In California, there seems to be a distinction. Well, why if you have a choice of law provision in your policy provision, why doesn't that include issue preclusion? So here's my understanding of what happened, that the contract requires Georgia law to apply, and that in earlier litigation, the insurance company didn't assert that provision, and it was litigated under California law, and you won. That's true. And now you'd like to take advantage of that win. I am paraphrasing, but this is my understanding, so it's an invitation to correct me. My understanding is you'd like to take advantage of that win via the doctrine of collateral estoppel, but you can't if Georgia law applies because then you won't have an identity of all the same interests and issues. But you're saying that if Georgia law applies to the preclusion question, then you would prevail because under Georgia preclusion law, you would, they don't have that rule. That's true. Have you demonstrated that with a case saying that? I believe we did in our brief. What's your best support for the notion that Georgia preclusion law applies? Well, once the court determined that the substantive law of the state of Georgia was the applicable law, then we believe it should apply to Georgia. Yes, and what's your support for that? You think then it would apply for all purposes and not for issue preclusion. And my question, I wasn't very clear, but my question is, what's your support for the position that then Georgia law applies for all purposes? Other than the fact that there is the substantive law of the state, it should be the forum, and she's chosen the forum to be. In other words, you would say that issue preclusion law is substantive law? Yes. Do you want to reserve time? Yes, I do. Okay, thank you. Thank you. Good morning. Robert Keister, appearing on behalf of Defendant Anna Pelley, TIG Insurance Company as successor by merger to American Safety Indemnity Company. Okay, I have two mega questions. One is the last one. First of all, do you agree that under Georgia preclusion law, there would be preclusion here if we were applying Georgia preclusion law? No. Georgia adopts a very similar standard to California, which is that you need the identical issue in the first action in order for issue preclusion. And does it also have law that says that if it's under a different state law, that isn't the same issue? I didn't hear you. That if it's under the law of a different state in some vague way, that that's not the same issue? That specific question was not addressed under Georgia law like it is in California. Okay. But the Georgia choice of law provision issue in this case merely found or merely holds that for purposes of interpreting the insurance policy and all its endorsements, Georgia law applies. Okay. I did not state that Georgia law applies for all purposes. And isn't the question of what law you apply part of how you interpret a policy? Whenever you interpret – and that's my second mega question. I don't understand why – what happened in California originally, which was the decision that these two provisions that are at stake mean – includes a choice – I don't see why the choice of law issue is outside of that decision such that there is an issue of preclusion. I don't understand that. I understand it wasn't argued specifically. I understand that part. But still, whenever you interpret a contract, you interpret everything in the contract, including the question of what law applies. No? No, not in this case, Your Honor. Why? There were two reasons why the interpretation in Pulte I was not found to apply by Judge Huff in Pulte II, the district court decision that's at issue in this case. One was that the court – the court of appeal and the trial court in Pulte I was applying California law. Correct. And the business risk exclusions under California law are interpreted differently. I understand that. Than under Georgia law. That was number one. Well, that's not a reason. That's just an observation. And number two, the trial court in Pulte I and the court of appeal both made a factual finding that Pulte had a reasonable expectation of completed operations coverage. That is contrary to the factual findings that Judge Huff made in this case based upon the subcontracts that were at issue that only required ongoing operations coverage and specifically did not include completed operations coverage. The evidence relied upon by Judge Huff also included the deposition testimony from the Pulte person most qualified who testified that at the time these policies were issued, Pulte knew that some of its subcontractors in Southern California How is that relevant to interpretation – interpreting the contract? It's relevant to Pulte's reasonable expectations. And under Georgia law, reasonable expectations of an insured are taken into account. Okay, but I'm trying to understand how we get to Georgia law where we have a prior California case interpreting these exact same provisions, leaving aside the facts but the legal interpretations of what they mean in some very specific ways. I mean suppose for example you have a contract where a certain provision says whatever it says and then there's another provision which if you read it and paid attention to it might trump that meeting. But nobody in the first case ever looks at that second provision. They just discuss the first one, right? Now you can't show up the next day and say oh wait, they never litigated the meeting of this other provision so there's a new issue and we're starting over again. Could you do that? I agree, Your Honor. All right. Now why isn't the choice of law provision in this policy exactly that? The reason why it's not exactly that, Your Honor, is that in the first case the court interpreted the provisions based upon California law. I know that. She's asking why. She's asking why. In my understanding, I was trying to do this earlier, my understanding is the same contract, same choice of law provision and your team didn't assert that provision and got a final judgment and that's what Judge Berzon is asking about. And I'm saying so why now can you do it if you had a provision that said No matter what X provision says, the rule in a certain circumstance is Y and that was never brought up in the first case. So why are you free to bring it up now? The reason why is that the auto owners versus gay construction case came out after the trial court. Now you want to. That's why you want to bring it up now. But she's asking a different question. It can't be enough just that now it's advantageous under Georgia law. That's not your answer. In order for Georgia law to apply, it has to be different than California law. Right? No, no, no. That's not necessarily true. In order for it to matter, it has to be different. But the contract both times had a Georgia law provision unless I'm misunderstanding. No, that's correct. But in order for a court to apply the law of another state, there has to be a difference between the law of the forum state and the law of the state which has. Well, it still wasn't litigated, though. You still didn't assert it. At the time, California starts by looking to the contract, and the contract pointed to Georgia, and you didn't assert that. Absolutely. It was not asserted in the trial court. So are you saying now? I know I'm interrupting. Forgive me. But are you saying now that had you asserted it, it wouldn't have made a difference because at that time there wasn't a conflict? Correct. Correct. So the auto owners case was decided in September, October of 2015. The trial court had already ruled on a motion, cross motions for summary judgment, that American safety owed a duty to defend. And so therefore at that time. But of course that can happen. So you're claiming a change of law. So now what you're essentially saying is that issue of preclusion, ordinary rules of issue of preclusion shouldn't apply because there was a change in law. And because there were factual findings made in Pulte I regarding the reasonable expectations of Pulte as to whether or not they would be receiving completed operations coverage. I thought reasonable expectations are not subjective. They depend on what the language of the policy says. Right? Right. So what's the difference? What the contracting parties knew about the surrounding circumstances of why they were buying this policy and not another policy? The reason why it's important, Your Honor, is that the trial court in Pulte I and the court of appeals found that because Pulte had expected to receive completed operations coverage based upon what was required in the subcontracts, that it was relevant for purposes of interpreting whether or not those additional insured endorsements provided that coverage. But Judge Berzon's question is, isn't their subjective understanding not part of the inquiry? Isn't it just supposed to be, again, did Pulte I involve the very same contract language? No, Your Honor. Well, I thought it involved some of the same contract language. Yes. The additional insured endorsements were the same. Okay. So getting back to then to Judge Berzon's question, isn't it the question of an objective understanding of what that contract means? And you seem to be speaking and repeating that there were findings of fact made about the subjective understanding. It's an objective determination based upon all the facts that were present under the circumstances. And so although it's a objective determination, you still have to look at what facts the parties were dealing with at the time that the contracts were entered into. And in this case, the additional insured endorsement. Your time is running down. Do you want to talk about the specific provisions briefly? Okay. So the specific provisions at issue in this case only provided additional insured coverage to Pulte for liability arising out of the ongoing operation. Is the word liability in the additional, in that particular provision? I didn't think it was, actually. Excuse me? Is the word liability in that provision that you're talking about? Yes, Your Honor. No. Where is it? So isn't, counsel, isn't the question whether the underlying complaints arguably allege property damage that occurred during the policy period that arose from the subcontractor's ongoing operations? Isn't that the question under that first provision? Well, no, Your Honor, because that provision provides that Pulte, and it's in the record, the supplemental excerpts at page 035, provides that Pulte is an additional insured, but only with respect to liability arising out of. So there's the reference to liability. Your work, which is ongoing. Right. That's essentially what I just said. Maybe we misunderstood each other, but it seems to me that the two complaints, the Morris and Salazar complaints, are ambiguous as to when the property damage occurred and therefore liability arose, and also they don't discuss how the property damage occurred except to say it's from the original construction. So it's possible that it arose from the ongoing operations that the liability arose, and I guess that's my question. Once there's an ambiguity in the underlying complaint, isn't there a duty to defend whether we're looking at Georgia law or California law? No, Your Honor, and the reason for that is that the district court below relying upon the Carl the liability with respect to these construction defect actions is a completed operations hazard. It's not a liability that arises out of ongoing operations. I don't really understand that. Suppose there is a flood during the construction, right? And so that was during the ongoing operations of the construction, right? Yes. And because of that flood, there's buckling in the foundation, and maybe that occurs at that time too. But the people who buy the house don't realize that, and then when they buy it, they find it out. So why isn't that coming from the ongoing operations? If it's as a result of the completion of the house and those defects and damages not being repaired prior to the completion of the house, that liability arises out of a completed project. But it doesn't arise out of the completed project. It arose out of what happened during the construction. Well, every defective condition arises out of the construction that was done. Correct. And so by trying to apply a but-for causation, you're essentially collapsing ongoing and completed operations to mean the same thing. Well, but that's the problem I have. Maybe you could back up and take another run at answering Judge Berzon's question because you may have just misspoken. But you were talking about, or Judge Graber's question, you were talking about liability arising out of a completed project. So the question we're trying to parse is the operations versus ongoing operations, right? Correct. Okay, and your position on this is in order for there to be coverage, there has to be what? In order for there to be coverage, the liability has to arise while the work is ongoing. That's what this court found in Evanston versus Westchester Fire. Well, wait a minute. So that means there has to be property damage. An occurrence is property damage, right? Correct. So you actually have to have – so if a contractor – let's make our subcontractor somebody who's doing wiring and they do some wiring and they don't do it very well and it lasts for a while, but later on, after the home is completed, there's a fire. Correct. So there wasn't property damage until there's a fire, so there wasn't an occurrence until there's a fire. Is there coverage for that? No, that's – But in my hypothetical, there was property damage at the time. Yeah, but can we – so there isn't coverage for – because mine arises out of completed operations?  All right, and then Judge Berzon's hypo? Judge Berzon's hypo still arises out of completed operations because the cause of action of the homeowners against Pulte does not arise until they own the home. So what? But it's still a right. But that theory, counsel, that theory is contrary to Pulte 1, which seems to me, whether it's preclusive or not, sensible on this issue. The policy requires, apparently, property damage to occur during the policy period, but it doesn't require that it manifests during the period or that the person owned the property at the time. The requirement of property damage during the policy period is a requirement under the policy, but in order for Pulte to be an additional insured, the liability for the work of the subcontractor must arise while the operations are ongoing. That's what this Court found in Evanston, and that's what the Fifth Circuit in Carl Woodward found. So go ahead. Even though – because in Carl Woodward, which was the Fifth Circuit decision relied upon by Judge Huff. But you see, the liability is not in the sentence that we're talking about. It says, only with respect to liability arising out of your work and only as respects ongoing operations. It doesn't say only as respects liability that occurred during ongoing operations. The liability is in the first phrase, but it's not in the second one. This Court in Evanston and the Fifth Circuit in Carl Woodward found that the fact that there may have been property damage during the policy period is not the key. The question is, when does the liability arise? The liability will arise for an ongoing operation. Well, that's fine if the policy said that, but this policy doesn't say that. The policy provides that Pulte isn't insured only with respect to liability that arises out of your work, which is ongoing. Right. Now, it doesn't say which is ongoing, at least the one that I'm reading. I know there were different policies. The one I'm reading says, and only as respects ongoing operations performed. So it doesn't say only as – the liability does not go into the second phrase. There were three different versions of the endorsement. Right. Pulte agrees that the language is substantially the same and shouldn't be interpreted differently. I'm looking at the first one that's cited in the district court's opinion, and it's in the record at supplemental excerpts 035. That is the provision that says, but only with respect to liability arising out of your work, which is ongoing. And so the issue is, is this ongoing operations endorsement going to be limited to worksite construction accidents, which this court in Evanston found? Do you want to – the one thing we haven't gotten to is the business risk and this auto insurance case and why it should be controlling here. I'll give you a minute and a half to do that. So the significance of the auto owners versus gate construction case is that when a GC, general contractor, like Pulte, makes a first-party claim, which this is, Pulte is seeking to recover defense costs from American Safety. So it's a first-party claim that the business risk exclusions apply to the entire project or, in this case, the entire home. It's a first-party claim because they're an additional insured. They're additional insured. They're seeking damages or recovery for defense costs, just like the GC. But in these policies, your work is specifically defined to mean the named party. Your work in the additional insured endorsement obviously refers to the subcontractor. But your work – But there's a definition. Your work means work or operations performed by you or on your behalf. Correct. Is there a different definition we're supposed to be looking at for your work? That is the definition. Okay. But for purposes of when a general contractor under Georgia law is seeking coverage as additional insured, the words you and your are interpreted to apply to the insured seeking coverage under the policy, which in this case is Pulte. And that's how the Court of Appeals in auto owners found that you don't look to the subcontractor's scope of work. You look to the scope of work of the general contractor. But that had a provision that said that other people can also be you. And this policy doesn't have such a thing. It does. Where? It's in the insuring agreement. So the definition of you or your in the insuring agreement of all of the American safety policies contain the exact same language. Can you give us that site? Can I come back? Well, on page ER-188, the words you and your refer to the named insured shown in the declarations and any other person or organization qualifying as a named insured under this policy. That's what I have. Is that the definition we should be using? That's it. Is that it? That is the definition, and that is the same definition. That's what I thought. I just asked you that, and you said no, there's a different. Did I misunderstand you? I may have misunderstood you. I must have. That's the one I have been using. That's the one you want me to use? Yes. Okay. Well, then we're good on that. Thank you. Okay. Thank you very much. Thank you. Thank you for your time. Robert Carlson again on behalf of Pulte. I have to take exception to the argument that it's a first-party claim. It's a third-party claim. It's a claim we're being defended. So to bring it within the argument is just not reasonable. I think the issue that was raised by Judge Graber was the one that's really important. Manifestation is the issue in both Georgia and California. When the manifestation occurs, that's when you can determine whether there's coverage or not. The burden is on the insurance company. Well, until then, there's no liability. There hasn't been, right? Until then, there's no liability. The district court clearly said there's not going to be coverage for liabilities that manifest after the subcontractor's operations are complete. Right? She relied on that. Right. And your response to that is? That there was no proof of when manifestation took place which would allow a reasonable carrier to deny defense. So at that time, because they're just looking at the allegations and the complaint. Exactly. Yes? This is at the outset. Right. And they denied at the outset without an investigation. They denied at the outset without knowing the facts. They denied at the outset without demonstrating or even attempting to demonstrate when the manifestation took place. And that's always the problem with insurance companies denying a defense is they have no sufficient facts to allow them to reach the threshold in Georgia or California that they can demonstrate by indisputable evidence that they don't have or will never have an obligation to identify. And when they fail to do that, as they did in this case, then the duty to defend attaches until such time as they make that demonstration. What should I make of the phrase ongoing operations? It seems to me, I just want to give you a chance to respond. It seems to me that your interpretation reads the word ongoing out of this clause and treats it just as operations. No, basically our position is two. One is that your work provides completed operations. And two, ongoing demonstrates the time in which the liability, the act that causes the liability to arise is a temporal analysis versus a restriction on the coverage. You had to be doing your ongoing operations. It couldn't be before your ongoing operations. It couldn't be after your ongoing operations. An act that took place during your ongoing operations led to the liability. That's our interpretation. And that means that if you used electrical, let's use stucco. If stucco is put up and it leaks while they're still having ongoing operations, we now have liability that arises out of their ongoing operations that has manifested itself. So, in other words, you would distinguish in the hypotheticals that we were giving before between electrical work that doesn't cause any problem until later and leakage that causes a problem during the construction, but the house is then sold and then they have a problem with it. So some of what's being alleged may be covered and some of it may not be. Absolutely. In the end. As to the two examples given, I would agree that if you have an electrical problem that causes no property damage, therefore no manifestation until such time as some later date after the operation is completed, yes, this provision may exclude it if you don't give completed operations to the term your work. However, if it leaks during the operation and liability arises out of that, you have a manifestation. It may not be discovered and certainly is not critical that who owns the house. It's not critical that the house is sold or not sold. What's critical is that their manifestation has taken place and the burden is on the carrier to demonstrate that manifestation is outside of their policy and they fail to do that. Okay. Thank you very much. Thank you both for your argument. Pulte Home Corporation v. TIG Insurance Company is submitted and we are in recess. Thank you. Thank you. All rise. This court stands in recess.
judges: Graber, Berzon, Christen